MARGARET MAY SWEENEY

*v.*

CARROLL FRANCIS SWEENEY.

[Filed December 16th, 1901.]

</div>

1. Upon the petition of a wife for a divorce on the ground of her husband's desertion of her in a foreign country, where the marriage took place and a matrimonial domicile had been maintained up to the time of the alleged desertion (the husband not having been served with process nor appearing), if the proofs show that petitioner's residence in this state was acquired without the *animus manendi* except for such period as would permit her to claim a right to file a petition under our Divorce law, or if the proofs leave the question of the *bona fides* of the residence in this respect in doubt, this court will not assume jurisdiction to dissolve the matrimonial *status*.

2. Proof that the husband left the house in which he and his wife lived, without doing any act or uttering any word indicative of an intent not to return, and that the wife has never since seen or heard from him, is not sufficient to establish an intent to desert and to continue his desertion, in the absence of proof from which it may be found or inferred that he remained alive and free and able to return if he had desired to do so. Such absence is not thereby sufficiently shown to be a willful and obstinate desertion for which a divorce may be decreed.

On exceptions to master's report.

*Messrs. McEwan & McEwan,* for the exceptant.

MAGIE, CHANCELLOR.

The report excepted to advised the denial of the decree of divorce prayed for by the petition, upon a single ground, viz.,

that petitioner had not acquired or maintained a residence within this state for the period of two years, during which the desertion complained of (which commenced in Cuba) continued, sufficient to give jurisdiction under our laws.

In my judgment the proofs which accompany the master's report amply justify his conclusion on this subject.

It appears therefrom that the petitioner and defendant were married in the year 1893, in the island of Cuba. Where the previous residence of the defendant had been is not disclosed, but the proofs clearly show that the parties acquired, and afterwards maintained, a matrimonial domicile in Cuba, up to the time of the alleged desertion. *Harral* v. *Harral, 12 Stew. Eq. 279.* The time of the desertion is fixed, by petitioner's deposition, as January 18th, 1896, when the parties were living at the house of petitioner's father, in Havana. On February 10th, 1896, petitioner left Cuba, and remained absent until the following May, when she returned to Havana, to the house of her father. In the early part of April, 1898, she came, with her mother, to Jersey City, to the house of her aunt, and remained there until July 2d, 1898. While there, and on April 24th or 25th, she proposed to her aunt that the latter should permit her to take a room in her aunt's house as her residence. The aunt assented to this proposal.

Petitioner claims that she thereby acquired, and has since maintained, a residence in Jersey City, and was resident there when her petition was filed, in July, 1900.

The jurisdiction of this court to decree a divorce from the bonds of matrimony, upon the ground of desertion commenced in a foreign state, where the matrimonial domicile was, can only be invoked, under the express provisions of our law, when one of the married parties is a resident of this state at the time of filing the bill, and has been such a resident for the term of two years, during which the desertion complained of has continued. *Coddington* v. *Coddington, 5 C. E. Gr. 263; Yates* v. *Yates, 2 Beas. 280; Brown* v. *Brown, 1 McCart. 78; McGean* v. *McGean, 15 Dick. Ch. Rep. 21; Tracy* v. *Tracy, 15 Dick. Ch. Rep. 25.*

In such cases the bill or petition should state facts showing the jurisdiction of the court. *Barrett* v. *Barrett, 10 Stew. Eq. 29.* The facts evincing jurisdiction must be proved. If the proofs

Sweeney v. Sweeney.

leave the jurisdiction in serious doubt, the court will not assume jurisdiction. *Goldbeck* v. *Goldbeck, 3 C. E. Gr. 42; Firth* v. *Firth, 5 Dick. Ch. Rep. 137.*

The residence required by the statute to enable the court to assume jurisdiction must be the fixed domicile or permanent home. *Coddington* v. *Coddington, ubi supra; Firth* v. *Firth, ubi supra.* When the domicile or residence is shown to have existed in a foreign state, and the claim is that the party invoking jurisdiction has become a resident of this state, the proof must show a voluntary change of residence to this state, and an actual residence at the place selected; to the *factum* of residence must be added the *animus manendi.* As was declared by Mr. Justice Depue, speaking for the court of errors, "that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless, and until, something which is uncertain and unexpected shall happen to induce him to adopt some other permanent home." *Harral* v. *Harral, ubi supra; Firth* v. *Firth, ubi supra; Tracy* v. *Tracy, ubi supra.*

Since a change of residence is evinced by an actual change of habitation, continued with a purpose and intent to make the new habitation a permanent residence for an indefinite and indeterminate period, the court whose jurisdiction is invoked by one who claims to have acquired and maintained such a new residence, must consider, not only the acts and conduct of the claimant, but also whatever tends to indicate the *animus* with which the change was made. Declarations accompanying the acts and characterizing the conduct may be considered, and the court cannot arbitrarily and capriciously refuse credit to the uncontradicted evidence of the claimant in respect to such intent. But, in general, acts and conduct afford more trustworthy proof upon the question than do the declarations of the claimant, and if the latter are inconsistent with the former, it may justify a determination against the residence claimed, or create such doubt or uncertainty as to require jurisdiction to be refused. *Firth* v. *Firth, ubi supra.*

In the October Term of 1861 Chancellor Green declared his opinion to be that an actual residence adopted in this state,

under circumstances that warrant the conclusion that the change of residence was made for the purpose of obtaining a divorce, would not, on grounds of public policy, satisfy the language of our act properly construed. This doctrine led him to refuse a divorce to a person who had been deserted in New York, and had obtained an actual residence here, but with the purpose of invoking the jurisdiction of our courts. *Brown* v. *Brown, 1 Mc-Cart. 78.* The decree in that case was reversed by the court of errors, in March Term, 1862, but the reporter, in a foot-note, regrets that he could not publish the opinion of Chief-Justice Whelpley, read by him in pronouncing the judgment of the court. *Brown* v. *Brown, 2 McCart. 499.* In *Coddington* v. *Coddington, ubi supra,* Chancellor Zabriskie declared that it was well understood that one ground for the reversal of the decree in *Brown* v. *Brown* was that the chancellor had held that an actual change of residence, although seemingly for the purpose of bringing a suit for divorce, was not sufficient, under the requirements of our act in respect to jurisdiction. Yet, notwithstanding the reversal in that case in 1862, we find Chancellor Green, in 1863, adhering to the same opinion, and making it a ground for refusing jurisdiction. *Winship* v. *Winship, 1 C. E. Gr. 107.* In *Mc-Gean* v. *McGean, ubi supra,* Vice-Chancellor Pitney refused to take jurisdiction in a case where he found that the petitioner, who sought a divorce on the ground of desertion in New York, had come to this state, under advise of counsel, and for the avowed purpose of seeking a divorce from our courts. His view was that such a change of residence was not *bona fide,* and did not entitle petitioner to claim relief here. The decree in that case was affirmed in the court of errors upon another ground, but Mr. Justice Gummere, who delivered the opinion of the court, declared that the evidence left the question of the *bona fides* of the residence of the petitioner in considerable doubt, which seems to indicate that, in the mind of the learned judge, *bona fides* was a necessary ingredient in the acquisition of a residence to confer jurisdiction. *McGean* v. *McGean, 49 Atl. Rep. 1083.*

I strongly incline to the view that the true construction of the act does not compel this court to open its doors to the complaint

of citizens of other states, who come to this state to obtain a relief which is unattainable in the states in which they have been injured, but deem it unnecessary to put this case on that ground, which may be deemed to be doubtful, under the decisions above referred to.

In *Tracy* v. *Tracy, ubi supra,* Vice-Chancellor Pitney expressed the view that when the circumstances proved were inconsistent with the purpose of the change of residence testified to by petitioner as being an intent to make New Jersey her home, the *animus manendi* was not established so as to justify the assumption of jurisdiction. The decree denying the relief sought in that case was reversed by the court of errors, on the ground that the proofs did show the acquisition of residence such as the statute required as a ground of jurisdiction. But the learned judge who delivered the opinion of the court apparently approved of the doctrine of this court in *McGean* v. *McGean, supra,* refusing jurisdiction on the ground that the avowed purpose of seeking a residence in New Jersey was to enable the complainant to obtain the relief in our courts which she was advised that she could not obtain in the courts of her previous residence, and distinguished that case from the one in hand, on the ground that in the latter there was no such purpose, and that petitioner's testimony that she intended to make this her permanent home was uncontradicted. He uses this language, however: "But if he [the party seeking to induce our court to take jurisdiction] goes with the avowed object of living there to secure a standing on which to found a judicial proceeding, a violent presumption would arise that the *animus* of remaining was not definite, but was largely determinate upon the termination of such procedure, and that an actual and *bona fide* residence has not been obtained."

Accepting this as the prevailing opinion of the court of errors, I observe that, in my judgment, it is applicable not only to cases where the change of residence is made with the avowed purpose of seeking a divorce in our court, but also to cases where the proofs justify the conclusion that such was the actual though not the avowed purpose. This conclusion will be strengthened if the proofs fail to show that the residence was intended to be

permanent, or if they show that it was acquired for a definite time.

Turning now to the proofs before the master, three observations may be made: (1) the petitioner, in her deposition, fails to expressly declare her intent to make her permanent home in New Jersey for an indefinite period; (2) there is, I will not say suppression, but at least omission to prove facts which might tend to elucidate the purpose of petitioner, and (3) there is evidence which justifies the conclusion that petitioner acquired the alleged residence for a fixed period substantially coincident with the statutory periods necessary for jurisdiction and made no provision for future residence.

The language of the petitioner, when the master examined her (as he properly did), was as follows:

"My reason for taking up my residence, in 1898, in Jersey City was because of the war. All American citizens were obliged to leave Cuba—and, also, on account of self improvement—I wanted to take up certain studies here—also to improve my health. I did not take up my residence in New Jersey at that time merely for the purpose of obtaining a divorce. At that time I intended to live and make my home in Jersey City. Since that time Jersey City has been my place of residence."

It is impossible to deny that the language of petitioner is appropriate to a residence for a definite period, and does not necessarily indicate a residence acquired for an indeterminate or indefinite period. It was, as she says, acquired because of the war in Cuba, because of self improvement in the way of study and health, and not *merely* for the purpose of obtaining a divorce. After the alleged residence was acquired she remained with her aunt about two months. Whether she occupied the particular room which she claims as residence during that period is not made clear. Since July, 1898, she has not occupied it at all·except by leaving some clothing there; but she has, during all that time, actually resided with her mother and, when in Jersey City, in another house.

The proofs show that petitioner's father, at the time petitioner's aunt agreed to her proposal to take a room in the aunt's house, contracted with the aunt to pay petitioner's board when she occupied the room, and to pay for the room when she did

Sweeney *v.* Sweeney.

not occupy it. The amount of the compensation to be thus paid might throw some light upon the transaction, but no evidence was given upon that point.

At the interview between petitioner and her aunt, at which the arrangement was made, her father and mother were present. Her father agreed to pay board for petitioner when occupying the room and to pay compensation for the room when she did not occupy it. The father has not been called as a witness. The mother, in describing the contract made, uses this language:

"I do not think there was anything said in regard to the time, except that she was to reside permanently in Jersey City for the next two years."

Others present at the same interview testify that they heard no limitation of time named, but the mother's testimony is not thereby contradicted, and cannot be disregarded.

These proofs will perhaps justify the conclusion that the alleged residence was acquired with the main and predominant intent to enable petitioner to seek relief in this court for the desertion she complained of. But without reference to that phase of the case, I feel bound to say that they either show that petitioner had not, at the acquisition of the alleged residence, the *animus manendi* in New Jersey which is essential to give jurisdiction to this court, or at least leave the matter in such serious doubt that jurisdiction ought not to be assumed therein.

Upon another ground I think the decree asked for should not be granted. That ground is that the proofs fail to clearly show a willful or obstinate desertion.

Petitioner testifies that defendant went away from the house of her father in Havana, in which she and he had been living for some time, on January 18th, 1896, and that she has never seen or heard from him since. The proofs indicate that he was a man of dissipated habits, and had frequently before gone away and remained some days. After leaving in January, 1898, he had not returned when, about three weeks afterwards, petitioner left Cuba and went to Porto Rico on a visit, remaining there until the following June. There is no proof of any word said by defendant on the day he left, from which it can be inferred

Sweeney *v.* Sweeney.

that he then intended to desert her. There has been shown no act, such as taking with him his clothing or belongings, from which such inference can be drawn. His continued absence is all that is given to us to characterize his acts and determine his intent. There is no proof whether search for him was made by petitioner, or her family, during his absence, nor whether, after she left her father's house on February 10th, he returned to find her gone, nor any other matter to help to determine what his intent was in going away and remaining away.

A divorce for desertion cannot be granted unless the act of desertion is willful, and its continuance is obstinate. When the facts proven will equally justify some other inference, that inference which establishes matrimonial dereliction ought not to be drawn. On the facts placed before the master, an inference of death would perhaps be as justifiable as the inference of matrimonial desertion. An inference that he, after leaving, had been rendered unable to return by an attack of some disease, or by aberration of mind, or by arrest and forcible imprisonment in Havana, then in a state of internal disorder, is quite as justifiable as the inference that he left home where he had been supported and cared for, however unworthy his conduct was, with the intent to sever his relations with his wife and to cease to have the benefit of a home. The case, in this aspect, differs from that of *Sargent* v. *Sergent, 9 Stew. Eq. 644,* cited for petitioner. In that case, as appears from the opinion in this court (*6 Stew. Eq. 204*), the husband, after leaving his wife without uttering a word or doing any act to evince the intent to desert her, was shown by the proofs, to continue to live supported, at least in part by contributions made by her, by medium of a friend of his, and she, very shortly after his leaving, had interviews with him. From this it appears that he was able to return and seek a renewal of the matrimonial *status.* That he did not do so for the period of two years, entirely justified the inference that his original leaving and continued absence were with the intent to desert. Such desertion was plainly willful and obstinate.

Upon either ground I think the decree must be refused and the petition dismissed.