[Filed May 26, 1886.]

## JOHN McCANN v. OREGON RAILWAY AND NAVIGATION COMPANY.

Riparian Rights—Wharf—Conveyance—Estoppel.—Welch, while the owner of lot 2 in block 112, in the town of Astoria, which lay partly above and partly below ordinary high tide in the Columbia River, conveyed to the Astoria Farmers' Co. the right to build a wharf on lands in front thereof, but several hundred feet out in the river, and upon condi-

tion that the grantee should erect such wharf. The grantee performed the condition, and afterward conveyed to the respondent. Subsequent to the erection of the wharf, Welch conveyed lot 2 aforesaid to the appellant. The wharf was afterwards destroyed by fire, and this suit is brought to restrain its reconstruction. *Held*, that the conveyance by Welch, while the owner of lot 2 as aforesaid, of the privilege of erecting a wharf in front of it, upon the condition aforesaid, conferred a complete right upon his grantees to build such structure by virtue of the provisions of chapter 63, Miscellaneous Laws; and a subsequent grantee from Welch, of said lot 2, took it subject to the acts of the latter affecting the riparian rights pertaining to it, and is estopped by his deed to object to the maintenance of such wharf.

Same—Donation Law.—A conveyance by a claimant under the donation law, by deed without covenants, of a riparian right incident to the land covered by his claim, and prior to the completion of his term of residence and cultivation, passes no title.

City of Astoria—Authority to Establish Wharf Line.—The power of the city of Astoria over the subject of the erection of a wharf within the city limits, in front of the shore of the Columbia River, is confined to the establishing a wharf line.

Clatsop County.    Plaintiff appeals.    Affirmed.

*James K. Kelly,* for Appellant.

If the state had a title to the tide-land in front of lot 2, block 112, on and prior to June 17, 1876, then McCann is now the owner of that title, unless he is in some way estopped from asserting that ownership by some previous act of his grantor. That the state was the owner and had the right to sell or dispose of the tide-lands will not now be questioned. (*Wilson* v. *Shively,* 11 Or. 218.) On the fifth day of September, 1873, the common council of Astoria passed an ordinance authorizing James Taylor and James Welch, and their associates, to erect a wharf in the town of Astoria, on the northerly ends of blocks 132 and 133. The only authority claimed for this action is the act of October 11, 1860, Statutes of Oregon, 787, chapter 63, Miscellaneous Laws. That statute was designed to encourage the *owner* of any land lying upon any navigable stream within the limits of any in-

corporated town, to construct a wharf beyond low-water mark to the channel, so as to facilitate intercourse from the land to the vessels in the river, and the authority of the city was to regulate the privilege *therein granted,* and no other. McCann, as the owner of lot 2 aforesaid, had the right to purchase "*all the tide-land belonging to this state in front of the land so owned*" by him, if he was the abutting owner. And of that fact there is no doubt, as it is not open to controversy. (Sess. Laws 1874, page 77.) If lot 2 in block 112 is land *abutting or fronting upon* the river, then the law gave the right of purchasing *all the tide-land belonging to the state* in front of that lot to the plaintiff. He is not confined to the limits or boundaries of his lot. (*Wilson* v. *Shively,* 11 Or. 218; *Wilson* v. *Welch,* 12 Id. 357; and Statutes of Oregon, p. 278, sec. 845, subd. 5.) The action of the school board in conveying said tide-lands to the plaintiff was final and conclusive, and their deed cannot be attacked collaterally. (*Hurst* v. *Hawn,* 5 Or. 275.) And the plaintiff, as "the riparian owner, has the right to the unobstructed use of the water-front of his lots." (*Van Dolsen* v. *Mayor of New York,* 17 Fed. Rep. 819.)

*C. B. Bellinger,* for Respondent.

Welch was the owner of block 112, including lot 2, up to October 3, 1874. As such owner, he had the right to build a wharf in front thereof, and to extend the same into the Columbia River below low-water mark as far as was necessary or convenient for the accommodation of ships, etc., subject to the regulation and direction of the city of Astoria. (Miscellaneous Laws, p. 787.) This right may be transferred without the shore, or may be reserved upon sale of the shore. (*Parker* v. *Rodgers,* 8 Or. 183.) And such transfer by Welch while the owner of lot 2 estops his grantee.

THAYER, J. The appellant brought a suit in the court below against the respondent, a private corporation, to enjoin it from erecting a wharf in the Columbia River within the corporate limits of the town of Astoria. The wharf is in front of lot No. 2 in block No. 112, but more than six hundred feet therefrom out in the river, and extends several hundred feet down the river below the front of said lot. The appellant purchased the lot from James Welch on the third day of October, 1874. It is a part of Shively's donation land claim which was settled upon at a very early date, and surveyed and laid off into lots and blocks. Welch acquired an interest in the claim at about the time of the settlement, which Shively recognized, and after the title was acquired to the claim under the donation act, the parties adjusted their rights by exchanging deeds to certain of the lots and blocks, which appear to have been platted before the passage of said act. The platting was not confined to the land above the meander line of the river; but extended into the stream, I should judge, far below low tide. There are two tiers of blocks, and two streets below said block No. 112, and ordinary high tide extends into that block, covering a large portion of said lot No. 2. The blocks immediately in front of said block No. 112, as shown upon the plat, are blocks No. 121 and No. 132, and the wharf in question is still beyond the farther one, and along or near the outer side thereof, and reaches to the ship's channel.

As early as the year 1850, Welch seems to have been regarded as owner of some of the blocks below high-water mark. Upon the eighteenth day of March of that year, he executed a deed to Shively to said block No. 121, and also to block No. 132, which latter is in the next tier of blocks out from block No. 121. Upon the eighteenth day of February, 1860, Shively executed to Welch

a deed to said block No. 112, and also to block No. 133, which latter block is in the same tier of blocks of that in which block No. 132 is situated, and is immediately west of it, lower down the river.    Upon the twelfth day of August, 1869, Shively executed to one James Taylor, a deed to said blocks No. 121 and No. 132, and on the fifteenth day of August, 1873, Taylor executed to the Astoria Farmers' Company, a private corporation, a deed to said block No. 132, and the easements in front thereof to the ship's channel, reserving seventy-five feet off the south or inner side thereof; and on the same day said Welch executed to the same company a deed to said block No. 133, and the easements to the ship's channel with a similar reservation.    Each of these deeds contained a condition that said company should, on or before January 1, 1874, build a sustantial wharf upon said blocks, and connect the same with the mainland by a thirty-five foot roadway.

Prior to the time of the execution of these deeds, the common council of the city of Astoria had passed an ordinance authorizing said Taylor and Welch and their assignees to build a wharf on the northerly or outer sides of said blocks Nos. 132 and 133, and to extend the same into the river to a line of frontage having twenty-two feet of water at mean low tide; and which required the wharf to be built within one year from the fifth day of September, 1873, the date of its passage; and on the seventeenth day of September, 1873, said Welch and Taylor assigned all their rights under the ordinance to the Astoria Farmers' Company, in which they required the company to build the wharf within a certain time. Said last-mentioned company built the wharf in 1874, and had begun building it, I should conclude, at the time the appellant purchased lot 2 from Welch, though it was not completed until later.

After the appellant obtained the deed from Welch, and on the thirtieth day of June, 1875, he filed an application with the board of school-land commissioners, under the provisions of the act of the legislative assembly of the state, approved October 26, 1874, which provides for the sale of swamp, overflowed, and tide lands, to purchase all the tide-land belonging to the state in front of said lot; and on the seventeenth day of June, 1876, the said board executed to him a deed purporting to convey to him as tide-land nine hundredths of an acre in front of said lot No. 2, at the price of $1.30. The parcel of land claimed to have been so conveyed adjoins said lot No. 2 on the north, and extends into the Columbia River at the farthest distance from said north boundary of the lot only about sixty feet, and the nearest point of its extent is about two thirds that distance.

A short time prior to the commencement of the suit the superstructure of the wharf was destroyed by fire. It was then and had for some time been owned by the respondent, which had acquired it from the Astoria Farmers' Company or its grantees, and was proceeding to rebuild it when this suit was begun to enjoin it.

The Circuit Court, after hearing the case upon the depositions and proofs submitted, dismissed the complaint, and decreed costs against the appellant, and from that decree the appeal is taken.

The appellant's counsel contended very earnestly upon the argument, that as neither Shively nor Welch had any title to the land claim prior to the passage of the donation law, their deeds to each other, in the absence of covenants, were worthless; that the platting of the land below high-water mark was a nullity, their attempted transfer or exchange of those lots and blocks were void, and that the ordinance adopted by the common council of the city of Astoria in favor of Taylor and Welch was

unauthorized.   The counsel, in the main, was correct in
his position, beyond any doubt.   Shively acquired no
rights to the land below the meander line by platting it
in the manner mentioned; nor did the ordinance of the
common council of the city confer upon Taylor and
Welch any right of wharf privileges not incident to their
ownership of the shore.   I do not think that the city of
Astoria had any authority over the subject beyond that
of establishing the wharf line.   As agent for the public,
it doubtless had authority to prescribe the distance the
wharf should extend into the river, and establish the
outer line of it; but it could not confer upon said parties,
or any one, a proprietary right to build or maintain a
wharf: it could only regulate the building.   Welch, how-
ever, at the time the ordinance was passed, owned said
block No. 112, and that gave him the right to build or
authorize the building of a wharf in front of it.   The
appellant's counsel concedes that, though he maintains
that he had no other right than to build out from the
shore; but chapter 63, Miscellaneous Laws, clearly author-
izes shore-owners in incorporated towns to construct
wharfs in front of them for the use and accommodation
of ships and vessels navigating the stream or water, and
invests the corporate authorities of such towns with the
power to prescribe the mode and extent to which the
right may be exercised generally, beyond the line of low-
water mark.   The main object to be attained in such
matters is the accommodation of navigation, and I can-
not see that it would make any difference whether the
shore-owner wharfed out from his land, or went out and
built the wharf in front of it.   Certainly no one could
complain of the latter course except the public, and it,
through its authorized agents, the corporate authorities
of Astoria, sanctioned that mode in this case.   The
building of the wharf in question in front of said block

No. 112 must be regarded as lawful, under the statute referred to, and that the Astoria Farmers' Company had the right to construct, complete, and maintain it unless some right intervened in favor of the appellant preventing it. Welch, being at the time owner of said block No. 112, and having a right under said chapter of the laws of the state to build the wharf, and having obligated the said company to build it, would render its construction lawful beyond doubt. But if it were otherwise, Welch had no right, in view of the facts, to complain of its construction. No one, it seems to me, would contend that when Welch executed to the appellant the deed to lot 2, he had any right to interfere with the completion of that wharf; and if he had retained ownership of the lot, he could never have objected to the maintenance of the wharf. Then what right had the appellant to complain after the delivery of the deed? He only " stepped into Welch's shoes," did it with his eyes open, and had no more right to object to the completion of the wharf prior to the acquisition of a new right than Welch would have had. It does not appear to me that there can be the slightest question upon this point. The appellant, being privy in estate with Welch, is bound by his acts affecting rights incident to the ownership of the lot, and is therefore compelled to rely upon his deed from the state as the foundation of his right to the injunction.

I have for some time maintained a different view from that of my associates upon the bench, and also from that expressed in the opinions of some of our predecessors in adjudged cases regarding the nature of the state's title to lands between high and low water mark upon navigable streams. I have never been able to believe that such title was anything more than a trust for the use and benefit of the public, or that the state had any more power to transfer it to private parties than it has to dis-

pose of the beds of such streams, and have considered the riparian right of a shore or bank owner upon navigable waters as a vested property right, of which he cannot be deprived without his consent, except under the law of eminent domain. My opinion upon the subject was expressed in *Wilson* v. *Welch*, 12 Or. 353. And according to that, the appellant obtained no title from the state by the deed of June 17, 1876, not even the nine hundredths of an acre, for which he paid the $1.30. I still adhere to that opinion; am thoroughly convinced that the state's ownership of the channel of a navigable stream, including the portion thereof between high and low water mark, is a mere governmental right; that it is subject to the public right of passage and navigation, and cannot lawfully be exercised so as to cut off or destroy the right of property or franchise of the riparian proprietor, or take it for public use without just compensation.

But waiving that view of the question, and conceding that the state is, as some of the authorities have said, the owner in fee of the lands referred to, and can grant them with the incidental rights of the shore or bank owners to any private person the state government may please to favor, and still I do not see how the appellant can be entitled to the relief claimed under the provisions of said chapter 63 of the laws of the state. Welch had been vested with the right to construct the wharf, and had transferred it to the Astoria Farmers' Company before he conveyed lot 2 to the appellant. It was a right which the state had, under the law, already granted, so far as it could be empowered to grant such rights, and it certainly had no authority to reinvest itself of it, and grant it to the appellant. Its power in that respect had been expended, and the appellant accepted the deed to the so-called tide-land in that condition of affairs, and I do not see how it can consistently be claimed that it operated

to divest the Farmers' Company of their right in the premises, and invest them in the appellant.

The wharf in question, with the privileges belonging thereto, is claimed to be valuable, worth several thousand dollars, and the conclusion is quite natural that the attempted conveyance of such an insignificant parcel of tide-land to the appellant for $1.30 is a slender thread upon which to hang such important property rights. The appellant's counsel contends that the Astoria Farmers' Company, never having applied to the board of commissioners for the sale of school lands under the acts of 1872 or of 1874 to purchase the land upon which the wharf stands, lost any right the company might have acquired from Welch; but it will be observed, from an inspection of the provisions of the two acts last referred to, that said company had no right to apply to said board to make such purchase. Under the act of 1872 no person aside from the owner of land "abutting, fronting upon, or bounded by" the tide-water, could make such application, except in case valuable improvements had been made upon the tide-land before the title to the land on the shore had passed from the United States; and the act of 1874 did not extend the right in that respect. At the time said company constructed said wharf, the title to the land on the shore had been passed from the United States about eight years. There was no statute whatever that I have been able to discover, which permitted said company to make such purchase. It, according to the theory advanced by the appellant's counsel, was at the mercy of Welch and his grantees of said block No. 112, respecting its proprietorship of the wharf. Welch could have turned around the next day and bought the property from under the company, no matter how valuable it may have been, or what the latter may have paid for it, and the company was entirely powerless to prevent it. If the company had gone to the state board while

the appellant's application to purchase the tide-land in front of said lot was pending, and urged the sale to itself of the land upon which the wharf was located, and had proved to the board that it had bought the right thereto of appellant's grantor, just previous, had paid thousands of dollars for it, and had expended a large sum in constructing the wharf, it would have been futile. The board could not have sold the land, as the improvements had not been made "before the title to the land on the shore had passed from the United States." The company would not have been a qualified applicant, nor the board have had any right to sell to it; but the appellant, it is contended, was able, upon payment of his $1.30, to entirely supplant the rights of the company in the premises.

No court in any civilized community, it seem to me, would uphold so flagrant an injustice. I think the appellant, when he accepted the deed from Welch to said lot No. 2, took it subject to the acts of the latter affecting the riparian rights pertaining to it; that the deed from Welch to the Astoria Farmers' Company, of August 15, 1873, and the assignment by Welch and Taylor of September 17, 1873, to said company, of all their rights under the wharf ordinance from the city, which imposed the obligation upon said company to build the wharf, was a relinquishment of any rights Welch may have had to the land upon which it was located arising out of his ownership of said block No. 112, or of any land owned by him at that time, which abutted upon said tide-water, and estopped him and his grantees thereof from ever objecting to the maintenance of said wharf. Any different conclusion of the matter, would, in my judgment, operate as a hardship and fraud, which a court of equity will never sanction. The decree appealed from should therefore be affirmed.