In re MARSHALL.

(Circuit Court, N. D. California. May 16, 1900.)

No. 12.897.

1. CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT— COUNTY ORDINANCE — GAME—HABEAS CORPUS.

A county ordinance making it a misdemeanor, and punishable by fine or imprisonment, for any person to use "any kind of a repeating shotgun, or any kind of a magazine gun, for the purpose of killing or destroying any kind of wild duck, geese, quail, partridge, doves, or any other birds," is in conflict with the fourteenth amendment to Const. U. S., providing that no state shall "deprive any person of life, liberty, or property without due process of law," in that it interferes with one's right of property in a repeating shotgun or magazine gun.

2. SAME—POLICE POWER OF STATES—GAME—PROHIBITING GUN OF CERTAIN MAKE.

Where the manifest purpose of a county ordinance is to prevent the taking or killing by one person of more than 25 quail, partridge, or grouse in any one day, it is not a reasonable exercise of the police power to prohibit the killing, within such limit, by the use of a repeating shotgun or magazine gun.

Bishop & Wheeler, for petitioner.
Hugh J. McIsaac and E. B. Martinelli, for respondent.

ROSS, Circuit Judge. The petitioner was convicted in the justice's court of Marin county, Cal., of a violation of the provisions of an ordinance enacted by the board of supervisors of that county declaring in its seventh section that "every person who, in the county of Marin, shall use any kind of a repeating shotgun, or any kind of a magazine shotgun, for the purpose of killing or destroying any kind of wild duck, geese, quail, partridge, doves, or any other birds, shall be guilty of a misdemeanor"; and by its eighth section, prescribing

that "any person violating any provision of this ordinance shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for not less than ten days or more than thirty days, or pay a fine of not less than twenty dollars or more than two hundred dollars, or by both such fine and imprisonment. A judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied, specifying the extent of imprisonment, which must not exceed one day for every dollar of the fine." The complaint upon which the petitioner was prosecuted, and on which his conviction rests, charges, in substance, that on the 12th day of January, 1900, he did in the county of Marin, state of California, use a repeating shotgun for the purpose of killing quail and blue jays, and did on that day and in that county shoot and kill with a repeating shotgun one quail and one blue jay, contrary to the provisions of the seventh section of the ordinance mentioned. A judgment of imprisonment having followed the conviction, the petitioner seeks his discharge from custody under that judgment by means of a writ of habeas corpus, on the ground that the judgment and his imprisonment thereunder are in contravention of provisions of the constitution of the United States, and therefore void.

By the fourteenth amendment of that constitution, it is, among other things, declared that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The broad question in the case is whether all or either of these provisions have or has been violated by the judgment under which the petitioner is held in custody. "Life," said Mr. Justice Swayne in the Slaughter-House Cases, 16 Wall. 127, 21 L. Ed. 425, "is the gift of God, and the right to preserve it is the most sacred of the rights of man. Liberty is freedom from all restraints but such as are justly imposed by law. Beyond that line lies the domain of usurpation and tyranny. Property is everything which has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner. Labor is property, and, as such, merits protection. The right to make it available is next in importance to the rights of life and liberty. It lies, to a large extent, at the foundation of most other forms of property." This was said in a dissenting opinion, but it is none the less true. The evidence given on the hearing of the application of the petitioner shows that the repeating shotgun with which the petitioner killed the quail and blue jay he was convicted of killing was his own gun, manufactured by a concern whose annual output of such guns aggregates several million dollars in value; that the petitioner killed the quail and blue jay on his own land; and that the gun in question with which he did the killing was not only not more, but in fact less, destructive than the double-barreled automatic ejector shotgun, not prohibited by the Marin county ordinance. Guns are made, not for ornament, but to be used; and their chief, if not their only, value is in their use. "The constitutional guaranty," said the court of appeals of New York in Re Jacobs, 98 N. Y.

105, "that no person shall be deprived of property without due process of law, may be violated without the physical taking of property for public or private use. Property may be destroyed, or its value may be annihilated. It is owned and kept for some useful purpose, and it has no value unless it can be used. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes without which property cannot be conceived, and hence any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property." See, also, Pumpelly v. Green Bay Co., 13 Wall. 177, 20 L. Ed. 557; Wynehamer v. People, 13 N. Y. 398; People v. Otis, 90 N. Y. 48. To deprive the petitioner of the use of the gun in question is therefore to deprive him of his property. Not only so, but, if Marin county may lawfully prohibit the use of such a gun, every other county within the state of California may, as a matter of course, do likewise, and so may every other state and territory within the United States; thus practically destroying the manufacture of this class of guns for the shooting of game within the United States. Of course, this right of property, as well as the higher right of liberty of action on the part of the owner,—the rights here involved of freely using one's own property,—is subject to the lawful exercise of the police power,—a power which, as said by the court in the Slaughter-House Cases, 16 Wall. 36, 62, 21 L. Ed. 394, "is, and must be from its very nature, incapable of any very exact definition or limitation." It is not denied on the part of the petitioner, and cannot be successfully denied, that private property and private rights must always yield where the public safety, public health, or public morals demand the sacrifice. Thus, if a great conflagration is spreading towards one's house, and the public exigency demands it, the individual's home may be torn down or blown up, if such drastic measure be necessary to stay the fire. So may gambling and dance houses and such devices and other things as have direct relation to public morals be absolutely inhibited and prohibited. On the same principle,—that of danger to the public,—it is held that the sale of intoxicating liquor by retail may be entirely prohibited, and the value of breweries destroyed, by the laws prohibiting the manufacture of malt liquors. Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; Mugler v. Kansas, 123 U. S. 669, 8 Sup. Ct. 273, 31 L. Ed. 205. But surely, in a case like the one at bar, where there is no question of the public safety, public health, or public morals, and where the prohibited act is in no respect malum in se, the absolute prohibition of the use of one's own property on his own land cannot be held to be a reasonable exercise of the police power, when regulation will plainly attain the end desired by the legislation in question. In the present instance, what was the end sought? Manifestly, only the prevention of the taking or killing by one person of more than 25 quail, partridge, or grouse in any one day; for section 3 of the ordinance provides:

"Every person who in the county of Marin shall take, kill or destroy more than twenty-five quail, partridge or grouse in one day, and every person who in the county of Marin shall have in his possession in any one day more than twenty-five quail, partridge, or grouse, shall be guilty of a misdemeanor."

That end is just as effectively accomplished without the obnoxious section as with it. It is wholly immaterial to that object whether the sportsman or hunter use a repeating or magazine gun, or a double or single barreled gun. When the limit is reached he has to stop shooting or incur the penalty prescribed. And the opportunity of detection is just as great in the one case as in the other. No valid reason is therefore perceived, and none has been suggested by counsel, why the owner of a repeating or magazine shotgun should be prohibited from using it, and the owner of the equally, if not more effective, double-barreled automatic ejector shotgun be free to use it, in killing the 25 quail, partridge, or grouse permitted to be killed by any person in one day. The equal protection of the laws, to which every person is, by the provision of the constitution of the United States above quoted, declared entitled, would indeed be a vain thing if such discriminatory legislation was sustained by the courts. If section 7 of the ordinance in question is valid, no reason is perceived why the process of elimination may not be extended by next prohibiting the use of the double-barreled automatic ejector shotgun, next all but muzzle-loading guns, and so on, until the popgun only is permitted to be used upon wild duck, geese, quail, partridge, grouse, doves, or other birds in Marin county. Laws enacted in the exercise of the police power, whether by a municipal corporation acting in pursuance of the laws of a state, or by a state itself, must be reasonable, and are always subject to the provisions of both the federal and state constitutions, and they are always subject to judicial scrutiny. Yick Wo v. Hopkins, 118 U. S. 372, 6 Sup. Ct. 1064, 30 L. Ed. 220; Forster v. Scott, 136 N. Y. 577, 584, 32 N. E. 976, 18 L. R. A. 543; Toledo, W. & W. R. Co. v. City of Jacksonville, 67 Ill. 37; Ex parte Whitwell, 98 Cal. 73, 32 Pac. 870, 19 L. R. A. 727. "Laws passed in the exercise of it [the police power]," said the court of appeals of New York in Re Jacobs, supra, "must tend towards the preservation of the lives, health, morals, or welfare of the community, and the court must be enabled to see some clear and real connection between the assumed purpose of the law and the actual provisions thereof, and that the latter tend, in some plain and appreciable manner, towards the accomplishment of the objects for which the legislature may use this power." In a very recent case the supreme court of California held that "a county ordinance making it a misdemeanor for one to transport, or offer to transport, from the county, game lawfully taken therein, is an unreasonable interference with the right of private property, and therefore void." Ex parte Knapp (Cal.) 59 Pac. 315. Enough has been said, I think, to show that the section of the ordinance under which the petitioner was convicted and is imprisoned is unconstitutional and void. But the further the matter is looked into, the more indefensible does the judgment of conviction appear. As has been seen, the charge against the petitioner upon which he was convicted, and for which he was sentenced to imprisonment, was the killing of one quail and one blue jay. Now, neither by the ordinance of Marin county, nor by any statute of the state of California, are blue jays in any way protected, except by those provisions

of the ordinance in question which declare it a misdemeanor for any person to use a repeating or magazine shotgun "for the purpose of killing or destroying any kind of wild duck, geese, quail, partridge, grouse, doves, or any other birds." This ordinance does not assume to protect blue jays in any other way, and I think it would puzzle any one to give a sensible reason why it should; for they are well known pests, and are unfit for human food, and are therefore not within the purview of the police power in respect to game, the source of which, said the supreme court in Geer v. Connecticut, 161 U. S. 534, 16 Sup. Ct. 606, 40 L. Ed. 799, "flows from the duty of the state to preserve for its people a valuable food supply." Yet a blue jay was one of the two birds the petitioner was charged with, and convicted of, killing, and for which he is imprisoned. And that blue jay the ordinance in question permitted the petitioner, or any other person, to kill with a rock, rifle, cannon, double or single barreled shotgun, or with any other thing than a repeating or magazine shotgun. Such discriminatory legislation, without any basis of sound reason to rest upon, is, in my opinion, so plainly void as to require no further comment.

An order will be entered discharging the prisoner from custody.