**THOMSON et al. v. DANA et al.**

No. 9217.

District Court, D. Oregon.

Aug. 31, 1931.

W. Y. Masters and W. H. Masters, both of Portland, Or., for plaintiff.

I. H. Van Winkle, of Salem, Or., and Chester E. McCarty, of Portland, Or., for defendants.

Before SAWTELLE, Circuit Judge, and McNARY and FEE, District Judges.

FEE, District Judge.

Plaintiffs are owners of a hotel on the McKenzie river, in Oregon, and engaged in the business of renting boats with oarsmen to persons who fish in that river. Defendants are public officers of the state, charged with the duty of enforcing chapter 185 of the General Laws of Oregon for 1931 (page 295) which regulates fishing on this stream.

Plaintiffs sued to enjoin the enforcement of this act on the ground that its provisions are in conflict with the Fourteenth Amendment to the Federal Constitution, and thereupon filed a motion for temporary injunction, based upon the allegations of the complaint, and defendants a motion to dismiss. Hearing was had before the court organized as required by section 266 of the Judicial Code, U. S. C., title 28, § 380 (28 USCA § 380).

A résumé of the allegations of the complaint follows: Plaintiffs are citizens of Oregon, and defendants are the game commission and game supervisor, respectively, of that state, whose duty it is to administer and enforce all the laws of the state respecting protection, preservation, and propagation of game fish therein.

Plaintiffs have for many years operated "Thomson's Resort" on the McKenzie, a navigable river, and at this hotel engaged in the occupation of entertaining and providing for tourists and guests induced thereto, by the fishing in this stream. A lucrative business has been built up by the expenditure of a large amount of money in procuring a number of rowboats, which plaintiffs have rented, together with oarsmen to operate same on the river, to tourists and guests for the purpose of angling.

The fishing in the McKenzie below its confluence with Blue river is not good after June 15th of each year, and for many years plaintiffs have transported patrons and boats to a point on the McKenzie a number of miles above the mouth of Blue river, and thence rowed their guests down the McKenzie so that the patrons could fish from the boats on the passage. This was a principal inducement to patronize the resort, and a source of great profit to plaintiffs, who themselves for many years fished from rowboats on the McKenzie.

The Legislature of the state passed chapter 185 of the General Laws of Oregon for 1931, an alleged law, which provides that after the passage of the act it shall be unlawful to fish with hook and line from any boat or other floating device in the waters of the McKenzie river above the confluence of Blue river therewith, and provides a penalty for violation.

The defendants threaten to enforce this statute and will prevent plaintiffs from carrying on their business above set out, and it will be destroyed, to plaintiff's irreparable injury exceeding $3,000.

This statute, plaintiffs claim, is in violation of the Federal Constitution because it abridges "the privileges and immunities of plaintiffs, and is unreasonable and arbitrary and deprives them of liberty and property without due process of law, and denies them the protection of the law."

Plaintiffs conclude "that also by the provisions of said alleged law, persons owning property along or upon the banks of the McKenzie River, above the mouth of the Blue River, are given a monopoly of the fishing in the river adjacent to their said lands, and plaintiffs and their guests are excluded and prevented from fishing in said river at said points, and the owners of land along the banks of said river, as aforesaid, are thereby granted rights and privileges that are denied to these plaintiffs."

It is a well-established rule that a state by virtue of residuary sovereignty controls the fish and game within its boundaries, as representative of its people and for the common benefit of all its citizens, and to that end it may regulate or prohibit fishing within its borders. Manchester v. Massachusetts, 139 U. S. 240, 11 S. Ct. 559, 35 L. Ed. 159; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385.

Until actual capture has been effected no property is acquired in the denizens of the wild. Except by legal fiction, Oregon has not, strictly speaking, a proprietary right in the fish in its streams. See Missouri v. Holland, 252 U. S. 416, 434, 40 S. Ct. 382, 64 L. Ed. 641, 11 A. L. R. 984. Supervision of wild life is exercised, moreover, as a trust for the people of the particular state, not as a "prerogative for the advantage of the government as distinct from the people, or for the benefit of private individuals as distinguished from the public good." Geer v. Connecticut, 161 U. S. 519, 529, 16 S. Ct. 600, 604, 40 L. Ed. 793.

The privileges and immunities guaranteed to the citizens of the United States by the Fourteenth Amendment do not include a right to share in the heritage of the people of Oregon, by fishing in the McKenzie river or any other stream within that state. Nor may any person fish in any such bodies of water solely by virtue of his citizenship in the United States. A right to take from the fisheries held in common by the citizens of Oregon is acquired only through membership in that body.

The Supreme Court of Oregon, in passing upon this subject, has said: "Before such privileges can be infringed it must satisfactorily appear that the authority of a person to take and catch salmon in the Columbia river is a right which is guaranteed to, and may be exercised by every citizen of the United States, though he may be a nonresident of the states of Oregon and Washington." State v. Catholic, 75 Or. 367, 373, 147 P. 372, 374, Ann. Cas. 1917B, 913.

Especially if it appear that reasonable classifications have been made in an effort to protect the fish, the property of plaintiffs has not been taken. For, in the enforcement of statutes looking toward the conservation of the food fish in a particular state, special instruments of violation may appropriately be outlawed, regardless of the time of acquisition. Miller v. McLaughlin, 281 U. S. 261, 50 S. Ct. 296, 74 L. Ed. 840; Lawton v. Steele, supra. In the statute here under consideration, no attempt is made to confiscate the boats belonging to plaintiffs, since the Legislature probably recognized these articles might well be used for purposes entirely innocuous, but the operation thereof in the depletion of the supply of fish in the McKenzie was forbidden. Full dominion over these boats still remains to plaintiffs; they may sell or dispose of them, or they may row their patrons over any of the waters in the state therein, or fish therefrom in any streams except prohibited portions of the McKenzie, and portions of two other rivers protected by similar laws. It is true the particular business of rowing boat-fishermen down the McKenzie for hire has been destroyed, but the state has always held the power to close the stream entirely to angling, and all must have realized that any business so built up was transacted at sufferance and subject to destruction whenever the policy of conservation of fish in the stream required. Bohman v. Gould, 169 Minn. 374, 211 N. W. 577.

Therefore it must be concluded that the protection of property rights, and the equal protection of the laws vouchsafed by the Fourteenth Amendment, depend entirely upon the same principles, when applied to regulation of the fisheries of a state. See Patsone v. Pennsylvania, 232 U. S. 138, 143, 34 S. Ct. 281, 58 L. Ed. 539. Conservation of fish for the common good of all citizens of a state is paramount, and reasonable regulations to attain that end do not infringe upon the property protective, the equality, nor even the commerce clauses of the Constitution of the United States.

A limitation, however, is that the real purpose of the legislation must be within the scope of the residuary sovereignty and appertain to the protection of the wild life, for the Federal Constitution does not permit a state, under the guise of conservation of fish, to work out ulterior designs. Foster Packing Company v. Haydel, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147.

Plaintiffs allege that the state officials named are required to enforce laws for the "protection, preservation and propagation of game fish" and that the fishing in the McKenzie river below the mouth of Blue river is not good after a certain date each year. No allegation is introduced tending to show the law was passed for any other purposes than those within the scope of the authority of these officials, and since at the same session statutes were passed regulating in the same manner portions of the Deschutes and Umpqua rivers, it is assumed the motive in each case was to prevent exhaustive methods of fishing and obtain the widest distribution of the food fish.

Since the assumption is accepted that the act was passed to foster the game fish of the state, it remains only to determine whether the classifications of the law were

unreasonable and arbitrary. The plaintiffs' complaint does not point out specifically wherein the classification made by the Legislature is void, except that special privileges are granted to riparians. The legislative act does not set out its purposes nor the basis of the classification. But the plaintiffs are attacking a law which is apparently drawn to carry out a power vested in the state. It is therefore incumbent upon them to point out specifically wherein the statute exceeds the power of the legislative body of Oregon. If no conflict with the constitutional clauses is patent, the law will be construed as a valid enactment. The Supreme Court of the United States has lately laid down this canon: "Why these provisions were inserted in the statute we are not informed, but we may assume, until the contrary is shown, that a state of facts in respect thereto existed which warranted the Legislature in so legislating." Wampler v. Le Compte, 159 Md. 222, 150 A. 455, 458; quoted in Wampler v. Le Compte, 282 U. S. 172, 175, 51 S. Ct. 92, 93, 75 L. Ed. 276.

In Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160, the court says: "One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

No fact is alleged upon which to base the contention that the state power of classification has been exercised unreasonably. The plaintiffs concede there is a basis for discrimination between fishing in the upper and lower McKenzie by the allegation that fishing is not good below the mouth of Blue river at certain periods. If there is a basis in fact for the classification, it is a well-settled rule that the legislative power of a state may place different streams or bodies of water under varying restrictions with respect to fishing therein. State v. Blanchard, 96 Or. 79, 91, 189 P. 421; Bohman v. Gould, supra. See Lawton v. Steele, supra.

The history of legislation regulating fishing is replete with statutory prohibition of various devices which the particular state for the time conceived were peculiarly destructive of fish. Provisions against seines, nets, traps, dams, and weirs are widespread, and in many cases antedate the Federal Constitution. Snag poles, set lines, spears and tip-ups have been forbidden in various jurisdictions. See Muska v. Apel (Wis.) 232 N. W. 593; People v. Page, 173 App. Div. 422, 159 N. Y. S. 1008; In re Gig or Spear Fishing, 16 Pa. Dist. R. 536; Com. v. Fasset, 16 Pa. Dist. R. 308. Such regulations have been acquiesced in by the people thereof, because they have been recognized as reasonable restrictions.

Regulations forbidding any other method of fishing except by a pole and line have been upheld. Peters v. State, 96 Tenn. 682, 36 S. W. 399, 33 L. R. A. 114. This court has held, three judges sitting, that fish-wheels could be forbidden on the Oregon side of the Columbia river above a specified point, notwithstanding the provisions of a compact between the states of Oregon and Washington. P. J. McGowan & Sons v. Van Winkle (D. C.) 21 F.(2d) 76, affirmed 277 U. S. 574, 48 S. Ct. 435, 72 L. Ed. 995. From every historical standpoint, therefore, the present classification is justified, since it is only a question of a greater degree of the same type of discrimination, and the question is generally for legislative determination. See Lubetich v. Pollock (D. C.) 6 F.(2d) 237, 242.

The view is presented that since Oregon has limited the number of fish which can be taken by an individual in a day, any classification of the devices by which this number is obtained would be arbitrary. Some color for this argument is found in the fact that a prohibition against a pump gun was held arbitrary where the statutes provided a bag limit, and another type of gun equally if not more destructive was not forbidden. In re Marshall (C. C.) 102 F. 323. But in the case at bar there is no probability that as many fish can be caught from the ground as from a boat, and it is reasonable to believe the distribution might be made to a greater number of people by the further restriction. Furthermore, no unconditional right to take the number of fish mentioned in the statutes is permitted to the fisherman. These are words of limitation, not of grant. The bag limit and the prohibition against boat fishing are independent. See State v. McCullagh, 96 Kan. 786, 153 P. 557, 559, 11 A. L. R. 980. These regulations each tend to conserve the diminishing number of fish, to furnish more sport for a greater number of people, and secure wider distribution of this food supply. It is elementary that a conclusion of law is not admitted by motion to dismiss.

The McKenzie is a navigable river, and therefore the conclusion in the complaint that the riparian owners have been granted a

monopoly of fishing in this stream is unjustifiable by the law. It has long been established in Oregon that "the owner of uplands bordering on navigable water has no title in the adjoining lands below high-water mark, nor any rights in or over the adjoining waters as appurtenant thereto." Hume v. Rogue River Packing Co., 51 Or. 237, 246, 83 P. 391, 92 P. 1065, 1068, 96 P. 865, 31 L. R. A. (N. S.) 396, 131 Am. St. Rep. 732; Bowlby v. Shively, 22 Or. 410, 30 P. 154; McCann v. Oregon Ry., 13 Or. 455, 11 P. 236.

The state has declared a navigable river between the lines of the ordinary high waters thereof to be a public highway for the purpose of angling, hunting, or trapping thereon, to persons who have complied with the license laws. Oregon Code, 1930, § 39-335. Obviously the plaintiffs or their guests, or the riparian owners, with equal freedom may fish from the banks of a navigable stream below the high-water mark. So far as concerns the person who engages in fishing, the law is general in its application. The landowner may fish from the banks of this navigable stream, so may the plaintiffs, and so may the citizen of Oregon who lives two hundred miles away. None of them may fish from a boat. Each is equally protected by the law. State v. Blanchard, 96 Or. 79, 85, 189 P. 421. "Legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." Barbier v. Connolly, 113 U. S. 27, 32, 5 S. Ct. 357, 360, 28 L. Ed. 923. The public, including plaintiffs and their patrons, still have the privilege of fishing in the upper McKenzie, and each may proceed to or upon that stream by such conveyance as may be practicable and desirable. However that may be, the state is not attempting to control the use of the McKenzie as a highway, and the riparian owners certainly have no more rights there than they have on unnavigable streams. They may prevent trespass on their own lands.

Besides, the right of fishing from a boat amounts in fact, although not in law, to a special privilege which, up until this enactment, belonged to that small body of persons who were able to own boats on the McKenzie, or hire them, with oarsmen, from plaintiffs. "There are also other considerations which might determine the Legislature in the enactment of laws, the purpose of which is to protect the fish and game of the state. One of such considerations is the desire on the part of the Legislature to permit the largest use of fish and game compatible with the reasonable protection thereof." In re Makings, 200 Cal. 474, 253 P. 918, 920. The legislation tends not to violate but rather to maintain that equality of right and privilege which is the obligation of the state. The belief that a wider distribution of the food fish of the McKenzie might be obtained under this statute was entitled to weight, so that private individuals might not benefit, to the detriment of the citizens of the state at large. The classification was reasonable, the purpose of the legislation was protection, and the law should be upheld.

The temporary injunction is denied, and suit dismissed.

SAWTELLE and McNARY, JJ., concur.