**BRANDENBURG et al. v. DOYLE, U. S. Dist. Atty., et al.**

No. 2162.

District Court, S. D. Illinois, S. D.

Oct. 25, 1935.

Logan Hay and Paul Gordon, both of Springfield, Ill., and David S. Lansden and David V. Lansden, both of Cairo, Ill., for plaintiffs.

Howard L. Doyle, of Decatur, Ill., Marks Alexander and James P. Dillie, both of Springfield, Ill., and Robert J. Clendenin, of Monmouth, Ill., for defendants.

Scott W. Lucas, of Havana, Ill., and R. O. Hillis, of Logansport, Ind., amici curiæ.

MAJOR, District Judge.

G. G. Brandenburg, president of the Illinois Sportsmen's Association, a voluntary, unincorporated association, and various other clubs, lodges, and individuals, residents and nonresidents of the state of Illinois, as plaintiffs, have filed their bill in equity against Howard Doyle, as United States district attorney for the Southern district of Illinois, and all United States district attorneys and marshals of all the federal judicial districts of Illinois, and John Martin as United States game protector, praying that said defendants and each of them be perpetually restrained and enjoined from enforcing regulations made by the Secretary of Agriculture of the United States and proclaimed by the President of the United States on July 30, 1935, said regulations purporting to be made under and by virtue of the authority contained in the Migratory Bird Treaty Act (USCA title 16, §§ 703–711), and to restrain and enjoin the defendants from making any arrests for any alleged violation of the same.

It is alleged that the said regulations are arbitrary, unreasonable, discriminatory, and without any basis, in fact; that they are vague and ambiguous and not made pursuant to the terms and provisions.

of the said Migratory Bird Treaty Act or the Migratory Bird Treaty entered into between the United States and Great Britain. It is alleged that the said regulations, as approved and proclaimed, were without regard to the zones of temperature, or to the distribution, abundance, economic value, breeding habits, or times and lines of migratory flight of said birds, as set forth in the section of the Migratory Bird Act, authorizing and directing the Secretary of Agriculture to make such regulations.

The plaintiff G. G. Brandenburg, president of the Illinois Sportmen's Association, an association composed of more than four hundred members, claims the rights of said members to hunt water fowl and other game birds under reasonable limitations and regulations will be infringed by the enforcement of the regulations in question; that said members are entitled, as of right, to hunt and take water fowl and other game birds, subject only to such regulations as may be reasonable, made under the provisions of the act and treaty heretofore referred to, and the enforcement of said regulations will seriously injure the plaintiff and members of the association whom he represents. Practically the same allegations are made with reference to the other plaintiffs, and in addition it is alleged with reference to some of the corporate plaintiffs that large sums of money have been expended in acquiring large tracts of land for the use of the stockholders of said corporations as hunting grounds for the hunting and taking of migratory water fowl.

It is further alleged that much money has been expended in the construction of lodges and other buildings for the use of stockholders or members, and the enforcement of the regulations complained of will cause a great depreciation in the value of said property and will cause plaintiffs irreparable injury. It is also alleged that it is a duty of the defendants to enforce said purported regulations and that they will proceed to do so unless enjoined and restrained by the decree of this court. It is claimed the amount in controversy exceeds the sum or amount of $3,000, exclusive of interest and costs.

In an amendment to the bill of complaint it is alleged that said regulations place the state of Illinois in the Northern Zone, together with states which lie far to the north of the state of Illinois and in which the regular, normal hunting season is far in advance of the regular, normal hunting season of the state of Illinois, and that said regulations place the state of Kentucky in the Southern Zone, although the major part of said state lies north of the southern part of Illinois; and the regulations are discriminatory as against the state of Illinois, and are therefore unreasonable and void, and that the regulations are not made with regard to the abundance of migratory game birds for the reason that there is a greater abundance of migratory game birds at the present time than for many years past.

In an additional amendment to the bill it is alleged that the regulations are void for the reason that they were made and signed by R. G. Tugwell, Undersecretary of Agriculture, purporting to act as Acting Secretary of Agriculture without authority to so act and without authority to sign such regulations.

Defendants filed a motion to dismiss the bill of complaint, the essential averments of which are:

1. That the complainants have no such interest in migratory birds as will entitle them to injunctive relief;

2. The "matter in controversy," exclusive of interest and costs, does not exceed the sum or value of $3,000;

3. The plaintiffs have a plain, adequate, and complete remedy at law.

It is also contended on behalf of the defendants that even should the court have jurisdiction, there are no facts set forth in the bill which show or indicate that the Secretary of Agriculture of the United States has acted arbitrarily or unreasonably in issuing the regulations in controversy. At a hearing on the motion to dismiss the bill of complaint, there was introduced in evidence a certified copy of the order of the Secretary of Agriculture concerning the regulations in question which reads as follows: "Pursuant to the authority and direction contained in Section 3 of the Migratory Bird Treaty Act [16 US CA § 704], approved July 3, 1918, I, R. G. Tugwell, acting Secretary of Agriculture, being cognizant of the marked depletion of game species which in many instances approach extinction, and having due regard to the zones of temperature and to distribution, abundance, economic value, breeding habits and times and lines of migratory flight of migratory birds included in the terms of the Convention be-

tween the United States and Great Britain for the protection of migratory birds, concluded August 16, 1916, have determined when, to what extent and by what means it is compatible with the terms of said convention to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, and export of such birds and parts thereof, and their nests and eggs, and, in accordance with such determination, to hereby adopt, effective upon the approval by the President, the following regulations, as suitable regulations permitting and governing hunting, etc. (Then follow regulations.)"

The jurisdictional question should first be disposed of. That the suit arises under the laws and treaties of the United States is apparent, but the real question is whether the matter in controversy exceeds the sum of $3,000. The question thus immediately presented is: What is the matter in controversy? Is it the regulations with the restrictions which they impose upon the plaintiffs to take, possess, etc., waterfowl as that term is defined in the treaty and statute heretofore referred to, or is it the damage which the plaintiffs allege they will sustain in the depreciation of property acquired for such purpose. The court concludes it is the former.

Plaintiffs allege in their bill that they have a right to take, possess, etc., such migratory birds subject to such reasonable regulations as may be imposed. Defendants deny that such right exists.

The courts have in many instances under varied circumstances had occasion to discuss the rights of the citizens in the wild life of the forests and the fish in the waters. In Geer v. Connecticut, 161 U. S. 519, on page 533, 16 S. Ct. 600, 606, 40 L. Ed. 793, in discussing restrictions imposed by the state, it is said: "Which limitations deprive no person of his property, because he who takes or kills game had no previous right of property in it, and, when he acquires such right by reducing it to possession, he does so subject to such conditions and limitations as the legislature has seen fit to impose." In the same opinion, quoting from an opinion of the Supreme Court of Illinois (Magner v. People, 97 Ill. 320) we find: "The ownership being in the people of the state, the repository of the sovereign authority, and no individual having any property rights to be affected, it necessarily results that the legislature, as the representative of the people of the state, may withhold or grant to individuals the right to hunt and kill game, or qualify or restrict, as in the opinions of its members will best subserve the public welfare." In Thomson v. Dana (D. C.) 52 F.(2d) 759, on page 762, the court said: "Until actual capture has been effected no property is acquired in the denizens of the wild. * * * Supervision of wild life is exercised, moreover, as a trust for the people of the particular state." In Missouri v. Holland, 252 U. S. 416, on page 434, 40 S. Ct. 382, 384, 64 L. Ed. 641, 11 A. L. R. 984, the court said: "Wild birds are not in the possession of anyone; and possession is the beginning of ownership. The whole foundation of the State's rights is the presence within their jurisdiction of birds that yesterday had not arrived, tomorrow may be in another State and in a week a thousand miles away." In the recent case of L. B. Shouse et al. v. John N. Moore, 11 F. Supp. 784, on page 787, the District Court for the Eastern District of Kentucky, on August 31, 1935, rendered an opinion dealing with the same character of case as is here presented, dismissed the bill of complaint seeking an injunction, and said: "In all of the cases referred to, the regulations dealt with property rights clearly protected by the 'due process clause' of the Constitution. No such right is involved here. The preservation of game and fish has always been treated as within the proper domain of the police power. * * * The constitutional guaranty that no person shall be deprived of life, liberty, or property without due process of law does not limit, and was not intended to limit, governmental regulation and control of migratory birds in which no right of individual property exists. * * * Hence, restrictions upon the privilege of hunting and killing migratory birds deprive no person of a property right which is within the protection of the Constitution."

From authorities above quoted and from many others which might be quoted, it seems plain to this court that plaintiffs have no property right in the migratory birds described in the regulations complained of; and having no property right in the birds they have only such permissive privileges as the governmental authorities may decree.

From the argument and briefs submitted, the court understands the contention of plaintiffs to be that the "matter

in controversy" is a damage or injury which they will suffer by reason of the decreased value of their real estate occasioned by restriction on their right to take, possess, etc., water fowl. It seems to me this position is untenable. Whatever damage or injury they may sustain in this respect is purely incidental or collateral to the object and purposes of the suit and cannot be taken into consideration in determining the amount in controversy. In Healy v. Ratta, 292 U. S. 263, on page 268, 54 S. Ct. 700, 702, 78 L. Ed. 1248, it is said: "It has been said that it is the value of the 'object of the suit' which determines the jurisdictional amount in the federal courts. * * * But this does not mean objects which are merely collateral or incidental to the determination of the issue raised by the pleadings. The statute itself does not speak of objects of the suit. It confers jurisdiction only if 'the matter in controversy exceeds * * * the sum or value of $3,000.' "

Those who spent large sums of money in the purchase of land and in improving and equipping the same as hunting grounds for the hunting and taking of migratory birds must have done so with the knowledge, actual or implied, that they had no property right in the same.

■ Courts have always been reluctant to grant injunctive relief against public officers. In Hygrade Provision Co. v. Sherman, 266 U. S. 497, on page 500, 45 S. Ct. 141, 142, 69 L. Ed. 402, the court said: "The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. * * * But appellants seek to bring themselves within an exception to this general rule, namely, that a court of equity will interfere to prevent criminal prosecutions under an unconstitutional statute when that is necessary to effectually protect property rights." In Packard v. Banton, 264 U. S. 140, on page 143, 44 S. Ct. 257, 258, 68 L. Ed. 596, the court, after announcing the same general rule as to the jurisdiction of courts of equity to restrain criminal prosecutions, with reference to the exception to the general rule said: "But it is settled that 'a distinction obtains, and equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, when the prevention of such prosecutions is essential to the safeguarding of rights of property.' " Many other cases could be cited

announcing the same doctrine. It is the conclusion of this court from a study of many cases that it is the general and perhaps the universal rule that public officers will be enjoined from the enforcement of state or federal laws only when the party seeking such injunction has a definite property right which will, without such relief, be damaged or destroyed.

■ It is the judgment of this court that "the matter in controversy" does not exceed $3,000 and the court is without jurisdiction. Also, that no property right of the plaintiffs is involved that would entitle them to an injunction under the circumstances here presented. Having reached this conclusion, there is no occasion to consider other questions presented.

The bill of complaint is dismissed.