Argued March 11, affirmed April 20, 1920.

## STATE v. BLANCHARD.*

(189 Pac. 421.)

**Statutes—Title of Act Regulating Fishing Held to Embrace Subject of Justice Court's Jurisdiction Over Prosecutions.**

1. Laws of 1915, page 226, which, with Section 5257, L. O. L., as amended by Laws of 1915, page 60, and Section 5283, prescribe comprehensive regulations for fishing, and for punishment for violations, is not invalid, under Article IV, Section 20, of the Constitution, declaring that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title, because Section 23 declares that, unless otherwise specifically provided, Justices' Courts shall have concurrent jurisdiction in the first instance with the Circuit Court of all offenses; that provision being connected with the subject matter of the act.

**Fish—Held in Trust by the State for the People.**

2. In so far as fish in streams of the state can be said to be property, they are held by the state in trust for the people.

**Statutes—Statute Fixing Different Regulations for Fishing in Different Counties not "Local Law."**

3. Though Laws of 1915, page 60, amending Section 5257, L. O. L., provides different regulations for fishing in different coun-

---

*On the question as to what discrimination as to persons is permissible in the fish and game laws, see notes in 39 L. R. A. 581, 60 L. R. A. 481, and 26 L. R. A. (N. S.) 794.    REPORTER.

ties of the state, it is not invalid, under Article IV, Section 23 of the Constitution, declaring that the legislature shall not pass special or local laws for punishment of crimes, for, though violation of regulations applicable to particular streams is made an offense, the act is not a "local law," which, properly speaking, is one whose operation is confined within territorial limits other than those of the whole state, or any properly constituted class of localities, while these special regulations as to particular streams apply to, all of the people of the state alike.

[As to the validity and construction of statute regulating method of taking fish, see note in Ann. Cas. 1917D, 814.]

**Fish—Courts Should not by Technical Construction Overthrow System of Statutory Legislation of Fishing Industry.**

4. In view of the magnitude and productiveness of the fishing industry, the courts should not, by narrow construction of constitutional provisions, destroy the statutory system regulating the fishing industry.

**Indictment and Information—Indorsement of Statute Supposedly Violated Adds Nothing.**

5. Indorsement on a complaint of the statutes supposedly violated adds nothing, and is not even required.

**Criminal Law—Objection That Complaint Stated Two Offenses and was Indefinite Held not Raised by Demurrer.**

6. Where a complaint charging that defendant unlawfully operated a set-net bore the indorsement, "Sec. 1, Chap. 362, Laws 1917, for penalty, Chap. 31, Laws 1919," and the indorsement was amended by striking out the reference to Laws of 1917, and inserting Section 1, Chapter 49, Laws of 1915, instead, the objection on appeal that the complaint was indefinite and stated violation of the two different laws was not raised by demurrer attacking jurisdiction of the court and the sufficiency of the facts stated to constitute an offense, and such matter could be raised only by demurrer, under Section 1491, subdivisions 2, 3, L. O. L.

**Fish—"Set-net" and "Drift-net" Defined.**

7. Within the Oregon statutes limiting fishing rights and regulating the use of nets, the term "drift-net" means a net with both ends free to drift with the current, while a "set-net" is one fastened at one or both ends, so the whole net cannot drift with the current, and notwithstanding this be in a condition to take fish.

**Fish—Evidence Held to Show That Defendant Operated Set-net Over More Than One Third of a Stream.**

8. In a prosecution for unlawfully operating a set-net, evidence *held* to show that defendant operated such a net, and that it extended more than one third the distance across the body of water, in violation of Laws of 1915, page 60.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

The complaint, as originally filed in the Justice's Court, charged that the defendant did—

"Unlawfully operate a set-net in the waters of Hoquarton Slough, Hoquarton Slough then being a tributary of Tillamook Bay, which said set-net then and there extended more than one third of the distance across the waters of said slough, provided said distance should have been measured from the edge of said waters."

Upon the lower left-hand corner of the complaint was indorsed the following words and figures, to wit:

"Sec. 1, Chap. 362, Laws 1917, for penalty, Chap. 31, Laws 1919."

The defendant interposed a demurrer to this complaint, and based the same upon two different grounds, to wit: (1) That the said Justice's Court had no jurisdiction to try the defendant upon said complaint, and (2) that said complaint did not state facts sufficient to charge defendant with the commission of a crime. This demurrer was overruled, after which the court allowed the district attorney to mark out said indorsements on the complaint, to wit: "Sec. 1, Chap. 362, Laws 1917, for penalty, Chap. 31, Laws 1919," and allowed said district attorney to indorse on said complaint, the following words and figures, to wit: "Sec. 1, Chap. 49, Laws 1915."

Thereupon the defendant pleaded "not guilty," and upon trial was found guilty and sentenced as aforesaid. Upon appeal to the Circuit Court the defendant interposed the same demurrer as in the Justice's Court, and the same was overruled. Defendant then pleaded "not guilty" and upon trial

was found guilty and sentenced to pay the sum of $100 and the costs of the action. During the progress of the trial the defendant seasonably objected to the introduction of any testimony for the reasons already stated, which was denied by the court; subsequently, at the close of the testimony, defendant requested the court to direct the jury to return a verdict in his favor, which was also refused by the court. The defendant appeals from the judgment of the trial court upon the verdict mentioned.

It is contended by the appellant that neither the Justice's Court nor the Circuit Court had any jurisdiction to try the appellant, in that the complaint did not state facts sufficient to constitute a crime, for the reason that it does not show under which of two different statutes he was being tried. It is further contended that the act (Chap. 49, Laws 1915) under which defendant was convicted was not constitutional, in that the title of said enactment did not contain any reference to the granting of special jurisdiction to Justice's Courts, whereas the act itself made special provision for enlarged jurisdiction for Justice's Courts. It is also contended that the legislation, whichever act he was tried under, is void and unconstitutional, in that it is local and special, applying to only a limited number of streams and arms of the sea, of which fact this court has judicial knowledge, and again that the evidence does not warrant nor sustain a verdict of guilty, because it does not show that appellant, at the time of his arrest by the fish and game warden of the State of Oregon, was operating a set-net, that is, one which was stationary, fastened at both ends, but, on the contrary, that one end at the time was free,

and was permitted consequently to drift according to nature with the current of the tide.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Talmage, Claussen & Mannix,* and *Mr. Webster Holmes,* with an oral argument by *Mr. Joseph Mannix.*

For the State there was a brief over the names of *Mr. L. A. Liljequist* and *Mr. T. H. Goyne,* District Attorney, with an oral argument by *Mr. Liljequist.*

McBRIDE, C. J.—1. Reversing the order in which defendant's objections are stated in the brief, we will first consider the question raised as to the constitutionality of the act.

There are upon the statute books two laws applicable to this opinion. The first of these is Section 5257, L. O. L., as amended by Chap. 49, Gen. Laws 1915, which amended section reads as follows:

"Sec. 5257. It shall be unlawful for any person or persons to construct, maintain, or operate any trap, weir, fishing dam, or fish wheel in any of the following named streams, or to operate any set net or other fixed appliance which shall extend more than one-third across any of the waters thereof; Willamette River and its tributaries, Rogue River and its tributaries, Umpqua River and its tributaries, Tillamook Bay and its tributaries, Alsea Bay and its tributaries, Windchuck River, Chetco River, Pistol River, Elk River, Sixes River, Coquille River, Coos Bay, Lower Ten Mile Creek, Upper Ten Mile Creek, Siuslaw River, Beaver Creek, Yaquina Bay, Siletz River, Salmon River, Nestucca Bay, Nehalem River, Elk Creek,, Necanicum River, Klamath River and tributaries; *provided,* that the provisions of this section shall not be construed to apply to that portion of  he Necanicum Creek or River below (the

lowermost bridge which is now constructed on said creek or river, or their tributaries) the lower end of riffles at Seaside House.''

In 1917, by Chapter 362, Gen. Laws of that year, it was enacted that,—

''Sec. 1. From and after the passage of this Act, it shall be unlawful to set or operate any setnet in any of the waters of District Number Two, in the State of Oregon, wherein it is lawful to use and operate such setnets, in such a way that said setnet shall at any time extend more than one-third of the distance across any of said waters, said distance to be measured from the edge of said waters.

''Sec. 2. Any violation of this Act shall be subject to the same penalties as are prescribed by Section 25 of Chapter 188 of the Session Laws of 1915.''

Section 25 of Chapter 188, Laws of 1915, prescribes the punishment for violation of any of the provisions of that act, and Section 23 thereof provides:

''Unless otherwise specifically provided, Justice Courts shall have concurrent jurisdiction in the first instance, with the Circuit Court of all offenses under this Act.''

By the provisions of Section 5283, L. O. L., District No. 1 includes the Columbia River, and all tributaries thereto, over which the state has jurisdiction. District No. 2, mentioned in the act of 1917, includes all coast streams and their tributaries south of the Columbia River.

It is very earnestly and ably contended that the two acts above recited are void, because in contravention of Sections 20 and 23 of Article IV of the Constitution, which provide that—

"'Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title.''

It is urged that because the act of 1915 contains a clause providing that Justices' Courts shall have jurisdiction of the offense described therein, and that this feature of the act does not appear in the title, the act is void. We are of the opinion that the punishment to be meted out for an infraction of the laws, and the court which may inflict the punishment, are matters "properly connected" with the act; and that the title is sufficient. Such provisions have not been infrequent in our legislation under titles no more comprehensive than in the present instance.

2, 3. Article IV, Section 23, above referred to, provides that the legislature shall not pass special or local laws providing for the punishment of crimes and misdemeanors, and it is urged that, if the state is proceeding under Chapter 49 of the Laws of 1915, such act is void, for the reason that it designates certain streams along the Pacific Coast, in which it is unlawful to place a set-net more than one third of the distance across the stream, and does not include other streams said to be the resorts of salmon. The argument of counsel is clearly put, and, as it fairly presents an objection which has been frequently urged in similar cases, we give it in his own language:

"We next contend that if the state is proceeding under Chapter 49, Laws 1915, the defendant should not be found guilty, for the reason that said statute is repugnant to Article IV, Section 23, and Article IV, Section 20, Oregon Constitution. This statute is so drawn as to select and specify certain streams and waters in the State of Oregon, to the exclusion

of a very great number of other streams which flow into the ocean. It is not a general law covering all streams and waters, but is a local and special enactment. It is a matter of common knowledge to all that there are a very large number of streams and lakes which empty into the ocean and which contain large numbers of salmon and other anadromous fish, which are not included in the scope of said statute, and there is one particular stream which is specifically excepted from the operation of said statute. It is true that the legislature in its wisdom has the power to regulate the fishing industry in this state, and it is equally true that the judiciary will not attempt to encroach upon the broad powers of those servants of the people, but it appears to us equally true that our court will carefully inspect any law which is special and local in its operation, and which is hostile to the spirit of our organic law. A glance at the map of Oregon will clearly show that there are a large number of good-sized streams and lakes in this state which are not within the scope of that statute, and we believe that every member of the court knows, *experte crede* that there is not a stream emptying into the Pacific Ocean but has salmon in it. In fact salmon are wont to inhabit the smaller streams in preference to the larger streams for the purpose of propagation.

"True, our court has held that a law may be local in its operation and yet not repugnant to the organic law, if it affects all equally who come within range of the same, but we believe that our Constitution was made to cover a broader field than that indicated by such decisions. For instance, I have in mind the waters of Devils Lake in the Salmon River country of Lincoln County. There, certain citizens are allowed to fish for salmon (and there are a great number of salmon in said lake and in the neighboring streams) in a manner absolutely prohibited under Chap. 49, Laws 1915, which in the Siletz River, only four miles south, citizens are compelled to fish in conformity to said laws. X owns property adjoining said lake, and near and adjoin-

ing his property is a valuable fishing hole. That
property is increased in value because of the valu-
able fishing rights connected with the same. On
the other hand, Y owns property on the Siletz
River, and adjoining his property is an equally
valuable fishing hole. Because of said statute, in
the former case, X can set a fixed trap or set-net
clear across said fishing hole, and gather all the fish
in the same, while Y, because of said statute, can-
not do the same thing. We ask whether X and Y
are treated alike under the law? There may be
cases where on broad grounds of public policy, the
legislature can "make meat of one and fish of another,"
but there must be some very good and cogent rea-
son for the same. They should not be allowed to
do so for the purpose of benefiting any one locality
or any one class of citizens."

This argument, while plausible, assumes (1) that
the law limiting the use of certain fishing appliances,
applies only to the citizens residing in the vicinity
of the stream to which the act applies, which is in-
correct. If a citizen of Harney County desires to
engage in fishing in the waters of Hoquarton
Slough, or in any of the restricted waters, he is as
much at liberty to do so on the one hand, and that
liberty is as much restricted on the other, as if he
resided upon the banks of the stream. So far as it
concerns the person who engages in fishing, it is
general in its application to every person so en-
gaged.

The argument also ignores the repeated decisions
of our own and other courts, that nobody has an
absolute right to fish in the waters of this state;
that the property in fish, abounding in the waters
of this state, so far as they can be said to be prop-
erty, is in the state in trust for the people, and, so
long as it does not discriminate between citizens, the

legislature may prescribe the time in which and the method by which the fish may be taken, and the waters from which they may be taken. As the Lord said, "Ye shall not eat of every tree of the garden," so the state may say: "You shall not fish in every stream in the state." The restriction, in its substance, does not apply to the water or the locality of the stream, but the fish that abound therein. It is the command of the *quasi* proprietor, designating upon what terms its property shall be enjoyed—by the citizen and by every citizen upon the same terms.

Take the comparison used by counsel between Devils Lake and the Siletz River, both assumed to abound in salmon, the waters of the first being unrestricted and the second subject to the restrictions of the act. Any citizen of the state may take fish from Devils Lake, if he chooses, and any citizen may take fish from the Siletz River, if he chooses, upon the terms prescribed by the law. It is true that it might be more convenient for the citizens residing on the shores of the Siletz to take salmon from that stream, than from Devils Lake; but the state is not bound to consult the convenience of parties who wish to take its fish from its waters, although in justice to the framers of the law, the writer, who is familiar with most of the streams mentioned in the act, will say it appears to him that the legislature made an approximately fair classification, and that in fact salmon in numbers sufficient to make the waters of Devils Lake commercially of importance, do not abound there, while they do so abound in the Siletz River and its tributaries; but whether or not he is mistaken in this is of no importance.

The counsel, we think, also errs in assuming that the act in question is a local law for the punishment

of crimes and misdemeanors. In discussing this branch of the question it should be borne in mind, that there is no *general* inhibition of local legislation to be found in our Constitution. Such legislation is forbidden as to particular subjects expressly enumerated, but among these subjects the protection of fish and game does not appear. So it would hardly be contended if the legislature, instead of providing a penalty by way of fine or imprisonment, had ordained that any person fishing contrary to the provisions of the act, could be restrained by injunction or some like civil procedure, that the act would be unconstitutional. The sole ground upon which its constitutionality is assailed is the fact that a criminal penalty is attached to its violation.

To this argument we cannot accede. We are of the opinion that the intent of the Constitution was to prevent a discrimination as to the punishment of the same crime in different localities; that is to say, the legislature cannot say that it shall be grand larceny to steal a horse in Yamhill County, and petty larceny in Marion County, and no crime at all in Polk County, or that a person convicted of larceny from the person in Marion County shall be punished by imprisonment in the county jail, while the same offense committed in Multnomah County shall be punished by imprisonment in the penitentiary, although as we shall presently show, a similar law had been declared by the New York Court of Appeals not to be a local law.

We quote Mr. Binney's definition of a local law, italicizing a phrase to which we shall presently advert:

"A local law is one whose operation is confined within territorial limits, other than those of the whole state, *or any properly constitutel class of*

*localities therein."* Binney on Special Legislation, p. 26.

This definition might be enlarged so as to include within its terms a requirement that the law, if confined to territorial limits less than the whole state, should, in addition to proper classification, affect equally every citizen of the state coming or being within the classified area.

To hold that a law, providing a classification thus based, is a local law, would be to destroy our whole system enacted for the protection of migrating fish. Take the act of 1915 now being considered. The Columbia River at Astoria is seven miles in width. Now it is obvious that a law which would permit a fisherman on a narrow body of water, like the Hoquarton Slough, to extend a set-net one third of the way across the stream, as he must to catch any considerable number of fish would be wholly inapplicable to the Columbia River, where drift-nets are used as a rule and set-nets the exception.

We may also take judicial notice of the fact that many, if not all, of the streams along the coast south of the Columbia River are narrow, tortious, snaggy and incapable of being fished to any great extent with drift-nets, and that if they are to yield salmon to capacity, set-nets should be permitted. We may also take judicial notice of the habit of salmon to return to the stream where they were spawned, so it is obvious that set-nets should be regulated that a single net may not entirely obstruct the passage of fish to the spawning grounds, and that such regulation is also necessary in order that the taking of fish may not be monopolized by one or a very few fishermen.

Any attempt to enact a law without classification, which will apply to all streams frequented by salmon and thereby protect the industry, must of necessity be abortive because of the above and other dissimilar conditions well known to all fishermen, and the courts of this state have therefore tacitly, if not expressly, recognized the right of the legislature to adopt· reasonable classification of streams for the protection of the industry.

In *State* v. *McGuire*, 24 Or. 366 (33 Pac. 666, 21 L. R. A. 478), the defendant was indicted for having in possession fish taken during the closed season. The indictment was in pursuance of a statute, passed in 1893 (Session Laws 1893, p. 145), which made it unlawful to take or have in possession salmon caught in certain streams therein designated during the closed season. The classification was no broader than the case at bar, and, while the court did not expressly consider the question as to whether or not the statute was local, it passed unchallenged.

In *Portland Fish Co.* v. *Benson,* 56 Or. 147 (108 Pac. 122), the law providing for a closed season was upheld, no question being made as to its being special or local, although the kindred subject of its being discriminating was discussed, Mr. Justice EAKIN saying:

"Where the stream is open, it is open to everybody, and there is no discrimination or spoliation of property. A law that operates only in a limited territory to accomplish a specific purpose does not deny equal protection of the laws, as it affects all persons equally and impartially who are similarly situated."

In short, while the exact question here discussed has never been formally passed upon up to the case of *State* v. *Savage, ante,* p. 53 (184 Pac. 567), acts of a similar character have been accepted by the

courts and acted upon for many years. But upon similar statutes relating to other subjects we are not without precedent in our own courts.

In *Ladd* v. *Holmes*, 40 Or. 167 (66 Pac. 714, 91 Am. St. Rep. 457), the court had under consideration an act providing rules for conducting primary elections in incorporated cities containing more than ten thousand inhabitants. Portland was the only city so qualified at the time. It was argued by the plaintiff that the act was unconstitutional in two respects: (1) That it violated Article IV, Section 23, subdivision 13, of the Constitution, which forbade the passage of special or local laws concerning the conduct of election; and (2) that it violated subdivision 2 of the same section, in that it prescribed a fine and imprisonment for violations of certain provisions of the law. The court held, as to the first specification, that a law classifying cities according to population was not a local law, and as to the second contention, it was held that the offenses described in the statute were mere creatures of and incident to the act, and the act being general, the punishment was properly provided.

In *State* v. *Savage, ante,* p. 53 (184 Pac. 567), Mr. Justice BEAN announces the same rule in passing upon an act for the protection of crabs in Coos County, saying:

"Section 5360, L. O. L., is not such a special or local law as comes within the inhibition of Article IV, Section 23 of the Constitution, for the reason it provides for the punishment as a misdemeanor for a violation of its provisions, as that is merely incident to the act. If the legislature can enact a law for the protection of fish and game in a certain section or part of the state, then it follows that the law may be enforced by the punishment of a violation thereof."

The question is not new to the courts of other states: *Doughty* v. *Conover*, 42 N. J. Law, 193, is a case in point. This cause arose upon a prosecution of one Doughty for unlawfully fishing with a net in the waters of Burlington and Atlantic. The statute read:

" * * That it shall not be lawful for any person or persons to put, place or haul any gill, drift or other net at any time whatever, for the taking or catching of fish, between the first day of June and the first day of September, in any of the waters of Burlington and Atlantic": Laws N. J. 1878, p. 396, § 2.

This was objected to as a local law, and under certain sections of the New Jersey Constitution, void for that reason. Mr. Chief Justice BEASLEY said:

"The provision thus arraigned interdicts the fishing with a net of a certain description, during a designated part of the year, 'in any of the waters of the counties of Burlington and Atlantic,' and the contention is that, as the operation of the clause is thus confined, the enactment is local, and consequently is out of harmony with one of the prohibitions in the fourth *placitum* of section 7 of the amended Constitution. The clause thus drawn in question declares that 'no general law shall embrace any provision of a private, special or local character.' But it seems to me very obvious that this restrictive injunction does not apply to such a law as the one under consideration. A law is not necessarily of a special or local character because it prohibits the doing of a thing in a certain locality. If this were so, a law regulating the use of the public roads of the state, and imposing penalties for the infringement of such rules, would be illegitimate, as such a law would be local, in the sense that it prohibited the doing of certain acts in particular localities, to wit: within the bounds of the public highways. I do not see how a law can be said to have

a special or local character, that does not confer either a particular benefit, or does not impose a particular burthen upon the inhabitants of a designated place or district. ·It is very plain that the law in question is free from such characteristics. It is entitled 'An Act for the preservation of fish,' and its purpose is to regulate throughout the state this public interest. The operation of the statute is as broad as the subject to be regulated, for it extends its adjustments to all the waters under the dominion of the state, and when it imposes the restrictions in the second clause, which is the one under criticism, such burthens are laid not only upon the inhabitants of the two counties that are mentioned, but upon all the citizens of the state. In short, this act dealt with a matter of general concern, and it put a restraint upon everybody; it is not,, therefore, special or local in its character."

The above case is in all substantial respects parallel to the case at bar.

Another case exactly in point is *State* v. *Corson,* 67 N. J. Law, 178 (50 Atl. 780), in which the defendant was indicted for violation of a statute entitled:

"An act for the better regulation and control of the taking, planting and cultivating of oysters on lands lying under tidal waters of the Delaware Bay and Maurice River cove, in the State of New Jersey."

At page 189 of the opinion of 67 N. J. Law (50 Atl. 785), Mr. Justice Gummere said:

"A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is, notwithstanding this fact, a general law, if it applies to all the citizens of the state and deals with a matter of general concern. * * The application of this principle led this court, in the case cited, to the conclusion that a statutory provision which made it unlawful for any person to net fish during certain periods of the year 'in the

waters of Burlington and Atlantic' was not special or local, but general. The act before us, tested by this rule, is also general. Although it deals with the lands of the state under tide water only in certain localities, the matters which it regulates are of general, not local, concern. The lands themselves belong to the people of the state, not to the citizens of the counties where they are located.

"Nor is there any selection, by the act, of favored individuals as the recipients of the state's liberality to the exclusion of other citizens. Every citizen is eligible to take a lease of these lands for the purposes to which they are · appropriated by the act, when he has been such for a period of twelve months next before the lease is made, and has also been a resident of the state during that time; and no citizen can enjoy this privilege until his citizenship and residence has continued for the period mentioned."

*Burnham* v. *Webster,* 5 Mass. 266, *Commonwealth* v. *McCurdy,* 5 Mass. 324, and *Harper* v. *Galloway,* 58 Fla. 255 (51 South. 226, 19 Ann. Cas. 235, 2 L. R. A. (N. S.) 794), are like in principle to the case at bar.

These are all fishing cases, but, if we go into decisions generally defining and explaining the meaning of the term "local legislation," abundant authority may be found supporting the constitutionality of laws applicable to particular localities, but general in their application to all persons coming within such localities.

In *Williams* v. *People,* 24 N. Y. 405, the contention arose upon the validity of a statute, which prescribed a greater penalty for larceny from the person—if committed in the City of New York—than that prescribed for the same crime, if committed elsewhere in the state. The argument was made on behalf of the defendant that the act was local, and

therefore in violation of the provisions of the Constitution relating to local legislation. Concerning this objection the court said:

"I am of the opinion that the thirty-third section, which provides for an increased punishment for petit larceny, when committed by stealing from the person, in the City of New York, is not local within the meaning of the Constitution. It has, no doubt, features which savor of locality, for it punishes a well-known common-law offense more severely, if committed under peculiar circumstances within the limits of that city, than if committed elsewhere. But it prescribes the rule of conduct for all persons, whether residents of the city or of any other part of the state, and its increased penalties are intended to protect residents of other localities equally with inhabitants of the city; and it was probably intended especially for the security of strangers and sojourners, who are apt to lack the habitual caution of permanent citizens of large towns. Offenders when convicted are to be imprisoned in one of the prisons of the state out of the city, and to be provided for at the expense of the state at large; and the disqualification which attaches to a convict under the act affects him wherever he may be in this state. I cannot think that a statute having such consequences is to be classed with special provisions making appropriations for particular roads, public buildings, or the like, situated in particular local divisions. Upon this point, I concur with the views expressed in the opinion given in the Supreme Court."

The ruling was followed in *People* v. *Davis,* 61 Barb. (N. Y.) 456, and in *Bretz* v. *Mayor etc.,* 6 Rob. (29 N. Y. Super. Ct.) 325, and other cases.

The question here discussed has recently been exhaustively briefed, and the subject of an elaborate opinion by Mr. Justice BEAN in *State* v. *Savage, ante,* p. 53 (184 Pac. 567), and to that opinion we still

adhere, notwithstanding the able argument of counsel for the appellant upon the rehearing. Many authorities might be cited which take a contrary view. Indeed, these equal, if they do not exceed, in number those cited as sustaining the views herein expressed; but an application of them to the situation in this state lead to the absurd consequence that it would be utterly impossible, by an act applying generally to all the streams in the state, to give any adequate protection to the fishing industry of the state.

4. It is needless to say that the fishing interest is of large importance in the industries of Oregon. The production of cereals at present brings in a greater gross income, but involves a gradual decrease in the fertility of the soil. The sheep and cattle raising industry is a great income producer, but with each succeeding year the pastures are denuded and in some localities they tend to approach a condition of barrenness. Not so the fishing industry. The unharvested sea is its pasture, and at trifling expense, comparatively, it can be maintained forever in its original productiveness, and has brought and is still bringing into the state millions of dollars annually, the greater part of which is "clear gain." These conditions, added to the legal considerations above set forth, should make courts cautious in reversing the policy of many years, and by a narrow construction of constitutional provisions to declare the legislation now on our statute books violative of our fundamental law, and thereby throw into hopeless confusion that system of legislation which, while far from perfect in detail, has sufficed to maintain the integrity of a great industry.

The constitutional objections being disposed of we recur to the other objections urged.

5, 6. The first has reference to the sufficiency of the complaint. It is claimed that the complaint was so drawn as to apply either to the offense denounced by Chap. 49, Laws 1915, *supra;* or to Chap. 362, Laws 1917, before quoted, the offense under the first of these statutes being within the jurisdiction of a justice of the peace to punish, while under the latter statute the justice has only jurisdiction to commit the defendant for trial in the Circuit Court. The transcript is incomplete as to what occurred in the Justice's Court, no record of these proceedings appearing here, but, as this defect could be supplied, we assume the statement in defendant's brief to be correct, for the purpose of this opinion, from which we gather that there was indorsed on the complaint the words: "Sec. 1, Chap. 362, Laws 1917. For penalty, Chap. 31, Laws 1919."

A demurrer was interposed for the reasons: (1) That the court had no jurisdiction to try the case; and (2) that the complaint did not state facts sufficient to constitute a crime. This demurrer being overruled, the brief states, and we assume the fact to be, that the district attorney, by leave of the court, scratched out the indorsement above noted and made the following indorsement: "Sec. 1, Chap. 49, Laws 1915. For penalty, Chap. 31, Laws 1919."

Upon appeal the same demurrer was interposed, and was overruled. The demurrer did not raise the question discussed here, which is that the complaint stated two offenses and was therefore indefinite as to the particular offense charged, or that the complaint charged more than one crime. That objection could only have been raised by a demurrer

under Section 1491, L. O. L., subds. 2 or 3. The indorsements on the complaint were not required by law and amounted to nothing for any purpose. The defendant pleaded not guilty and was tried and sentenced to pay a fine of $100 in the Justice's Court, and it sufficiently appears that he was tried for the offense described by Section 5257, L. O. L., as amended by Chap. 49, Laws 1915.

7, 8. It is also claimed that there is no evidence that defendant was operating a set-net. The evidence indicates that Hoquarton Slough is a tidal tributary to Tillamook Bay; that on the occasion of the arrest of defendant he was found about midnight, and at low-water slack, with a gill-net fastened at one end to a snag and extending more than two thirds of the distance across the stream, then making an acute angle back across the stream, and back and across again at another angle to defendant's boat, thus giving the general appearance of three nets, each extending more than two thirds of the way across the stream. The defendant claimed to be washing his net, but the state's witnesses saw no appearance of washing, and he took in the net immediately after they accosted him.

A drift-net is a net with both ends free to drift with the current. A set-net is one fastened at one or both ends, so the whole net cannot drift with the current, and, notwithstanding this, be in a condition to take fish. In the slack condition of the water at the time of the alleged offense, the manner in which the net was fastened made it just as capable of taking fish as if both ends had been made fast. The jury was the judge, under the circumstances detailed, as to whether defendant's statement, that he

was washing his net was true, and it evidently rejected that theory.

The judgment of the lower court is affirmed.

AFFIRMED.

Bean, Johns and Bennett, JJ., concur.